<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| KRISTINE W., <br><br>    Plaintiff, <br><br>     v. <br><br>COMMISSIONER OF SOCIAL SECURITY, <br><br>    Defendant. | Civil Action No. 25-5437 (MAS) <br><br>**MEMORANDUM OPINION** |

<u>**SHIPP, District Judge**</u>

This matter comes before the Court upon Plaintiff Kristine W.'s ("Plaintiff")[1] appeal of the Commissioner of the Social Security Administration's (the "Commissioner") final decision denying Plaintiff's request for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). (ECF No. 1.) The Court has jurisdiction to review this matter under 42 U.S.C. § 405(g) and reaches its decision without oral argument under Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons below, the Court affirms the Commissioner's decision.

**I.  <u>BACKGROUND</u>**

In this appeal, the Court must consider whether the Administrative Law Judge's (the "ALJ") finding that Plaintiff was not disabled is supported by substantial evidence. The Court begins with the procedural posture and decision by the ALJ.

---

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

### A.    Procedural Background

Plaintiff filed an application for DIB in April 2016, alleging a disability onset date of October 31, 2013. (AR 153, ECF No. 4.[2]) The Social Security Administration (the "Administration") denied the application both initially and upon reconsideration. (*Id.* at 61-69, 71-80.) Plaintiff later amended the alleged onset date to December 1, 2015. (*Id.* at 10.) On January 2, 2019, the ALJ found that Plaintiff was not disabled. (*Id.* at 10-20.) Plaintiff submitted a request for review with the Appeals Council which was denied on March 25, 2020. (*Id.* at 1, 150.) Plaintiff thereafter appealed to this Court, and the matter was subsequently voluntarily remanded. (*Id.* at 933, 936, 942.) The Appeals Council then remanded the decision to the ALJ. (*Id.* at 944-46.) The ALJ held a second hearing on November 7, 2023. (*Id.* at 862-907.)

On January 23, 2024, the ALJ denied Plaintiff's claim. (*Id.* at 859-78.) Plaintiff submitted a request for review, which the Appeals Council denied (*id.* at 852, 1118), making the ALJ's January 23, 2024, decision the Commissioner's final decision. This appeal followed. (*See generally* Compl., ECF No. 1.) On September 22, 2025, Plaintiff filed her moving brief in this action. (Pl.'s Moving Br., ECF No. 7.) The Commissioner opposed (Def.'s Opp'n Br., ECF No. 14), and Plaintiff replied (Pl.'s Reply Br., ECF No. 15).

### B.    The ALJ's Decision

In his January 23, 2024, decision, the ALJ concluded that Plaintiff was not disabled. (AR 878.) The ALJ set forth the Administration's five-step sequential analysis for determining whether an individual is disabled. (*Id.* at 863-64 (citing 20 C.F.R. § 404.1520).) As an initial matter, the

---

[2] The Administrative Record ("AR") is located at ECF Nos. 4 through 4-19. The Court will reference the relevant pages of the AR and will not reference the corresponding ECF page numbers within those files.

ALJ found that Plaintiff "last met the insured status requirements of the . . . Act on September 30, 2018." (*Id.* at 865.) At step one, the ALJ found that Plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of October 31, 2013[,] through her date last insured of September 30, 2018 . . . ." (*Id.*) At step two, the ALJ determined that Plaintiff had several severe impairments during the relevant period: (1) degenerative disc disease with radiculopathy; (2) osteoarthritis of the knees; (3) irritable bowel syndrome (IBS); (4) ulcerative colitis; and (5) overweight. (*Id.*) The ALJ also determined that Plaintiff had the following nonsevere impairments: (1) depressive disorder; and (2) anxiety disorder. (*Id.*)

At step three, the ALJ determined that through the date last insured, Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in . . . 20 C.F.R. [§§] 404.1520(d), 404.1525, [or] 404.1526[.]" (*Id.* at 867-68.) With respect to Plaintiff's physical impairments, the ALJ stated that he specifically reviewed: the listings at 1.15 (disorder of the skeletal spine), 1.16 (lumbar spinal stenosis), 1.18 (abnormality of a major joint in extremity), and 5.06 (gastric impairments); and SSR 19-2p (which addresses obesity). (*Id.*)

The ALJ determined that Plaintiff "had the residual functional capacity [("RFC")][3] to perform light work as defined in 20 C.F.R. [§] 404.1567(b)[.]" (*Id.* at 868.) Plaintiff, however, was limited to: "occasionally balance . . . , stoop, crouch, and climb ramps and stairs; [could] never

---

[3] RFC is defined as "the most [an individual] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1); *see Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by her impairments[.]" (citing *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999))). Determination of a claimant's RFC is the exclusive responsibility of the ALJ. 20 C.F.R. § 404.1546(c); *Connor D. S. v. Bisignano*, No. 23-2866, 2025 WL 2784226, at *10 (E.D. Pa. Sep. 30, 2025).

crawl nor climb ladders, ropes, or scaffolds[; but] she could never be exposed to unprotected heights or hazardous machinery[;] and needed proximate access to restroom facilities." (*Id.*)

At step four, the ALJ found that Plaintiff was "capable of performing past relevant work as a hair stylist[,]" and that such "work did not require the performance of work-related activities precluded by" Plaintiff's RFC. (*Id.* at 876.) The ALJ also noted that "[i]n addition to past relevant work, there were other jobs that existed in significant numbers in the national economy that [Plaintiff] could have [also] performed." (*Id.* at 877.) The ALJ considered that Plaintiff was fifty years old on the date she was last insured, which is defined as "a younger individual,"[4] and has at least a high school education. (*Id.*) Based on the aforementioned factors and Plaintiff's RFC, the ALJ determined that "through the date last insured . . . [Plaintiff] was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." (*Id.* at 878.) In doing so, the ALJ relied upon the testimony of the vocational expert, who testified that an individual of Plaintiff's age, education, work experience, and RFC "would [be] able to perform the requirements of representative occupations such as" inspector packer, mail sorter, or small parts assembler. (*Id.* at 877.)

At step five, the ALJ determined that Plaintiff was not disabled, as defined in the Act from October 31, 2013 (the alleged onset date), through the date Plaintiff was last insured, September 30, 2018, for the purposes of Plaintiff's DIB claim. (*Id.* at 878.)

---

[4] The ALJ noted that Plaintiff "subsequently changed age category to closely approaching advanced age[.]" (AR 877.)

## II.    LEGAL STANDARD

### A.    Standard of Review

On appeal from the final decision of the Commissioner, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). To survive judicial review, the Commissioner's decision must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 390 (1971) (quoting 42 U.S.C. § 405(g)); *see Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000) (explaining that the reviewing court is "bound to the Commissioner's findings of fact if they are supported by substantial evidence"). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence "'may be somewhat less than a preponderance' of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)), *abrogated on other grounds by Sims v. Apfel*, 530 U.S. 103 (2000).

In reviewing the record for substantial evidence, the court "may not weigh the evidence or substitute [its own] conclusions for those of the fact-finder." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (internal quotation marks and citation omitted). Even if the court would have decided differently, it is bound by the ALJ's decision if it is supported by substantial evidence. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)). The court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing

*Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999)). "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981) (citation omitted).

**B.    Establishing Disability**

To be eligible for DIB, claimants must be unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A). For purposes of the statute, a claimant is disabled only if her physical or mental impairments are "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423(d)(2)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

Administration regulations provide a five-step evaluation procedure to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4). For the first step, the claimant must establish that she has not engaged in any substantial gainful activity since the onset of her alleged disability. 20 C.F.R. § 404.1520(a)(4)(i). For the second step, the claimant must establish that she suffers from a "severe . . . impairment" or "combination of impairments." *Id.* § 404.1520(a)(4)(ii). Claimants bear the burden of establishing the first two requirements, and failure to satisfy either one results in a denial of benefits. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The third step

requires that the claimant provide evidence that her impairments are equal to at least one of the impairments listed in Appendix 1 of the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that she suffers from a listed impairment or that her severe impairment is equal to a listed impairment, she is presumed to be disabled and entitled to DIB. *Id.*; 20 C.F.R. § 404.1520(d). If she cannot so demonstrate, the eligibility analysis proceeds to step four. *See* 20 C.F.R. § 404.1520(e).

Under the fourth step, the ALJ determines whether the claimant's RFC permits her to resume her previous employment. *Id.* If claimant's RFC permits previously employment, she is not "disabled" and thus is not entitled to DIB. *Id.* § 404.1520(f). The burden of persuasion rests with the claimant in the first four steps. *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 763 (3d Cir. 2009). At the fifth step, the burden shifts to the Commissioner to demonstrate that the claimant can perform other work consistent with her medical impairments, age, education, past work experience, and RFC. 20 C.F.R. § 404.1520(g). If the Commissioner cannot satisfy this burden, the claimant will receive DIB. *Id.*

### III.    DISCUSSION

Plaintiff appeals the ALJ's decision and raises three main arguments in support of remand. (*See generally* Pl.'s Moving Br.) Specifically, Plaintiff contends that the ALJ: (1) failed to properly evaluate the impact of Plaintiff's ulcerative colitis and IBS on her ability to maintain regular attendance and remain on-task, despite vocational expert testimony that such limitations would preclude employment; (2) improperly discounted well-supported opinion evidence from treating examining providers, substituting lay judgment for professional findings; and (3) failed to follow the minimal severity standard at step two when evaluating Plaintiff's impairments. (Pl.'s Moving Br. 16-26; Pl.'s Reply Br. 1-5.)

7

As explained below, the Court concludes that the ALJ's decision is supported by substantial evidence.

**A.      The ALJ properly weighed the impact of Plaintiff's ulcerative colitis and IBS in fashioning the RFC determination which is supported by substantial evidence in the record.**

Plaintiff argues that the ALJ erred by failing to properly evaluate the impact of Plaintiff's ulcerative colitis and IBS on her ability to maintain regular attendance and remain on-task, despite vocational expert testimony that such limitations would preclude employment. (Pl.'s Opp'n Br. 16-19.) Plaintiff contends that the ALJ's requirement of "'proximate access to restroom facilities' . . . does not address the practical reality of Plaintiff's impairments." (*Id.* at 17.) Namely, the requirement does not adequately address "the time spent in the restroom during flareups, the fatigue, and the need for absences." (*Id.*) Plaintiff contends that by "failing to incorporate functional limitations stemming from Plaintiff's severe gastrointestinal conditions, the ALJ effectively substituted lay judgment for both the medical evidence and Plaintiff's testimony." (*Id.* at 18.) Plaintiff maintains, moreover, that "[t]he ALJ's RFC is not supported by substantial evidence because it fails to account for the functional limitations imposed by Plaintiff's IBS and ulcerative colitis." (*Id.*) Plaintiff cites *Williams v. Commissioner, Social Security Administration,* to support her argument that this Court should remand this case because the ALJ "failed to incorporate functional restrictions related to restroom frequency." (*Id.* at 17 (citing *Williams v. Comm'r, Soc. Sec. Admin.*, No. 18-13465, 2019 WL 4574502 (D.N.J. Sep. 20, 2019)); Pl.'s Reply Br. 4.)

The ALJ's decision in *Williams*, however, is distinguishable from the ALJ's decision here. In *Williams*, the ALJ's decision did not cite or discuss a doctor's treatment report regarding the plaintiff's overactive bladder despite the report being admitted into evidence during the disability hearing. 2019 WL 4574502, at *2. The court in *Williams* rejected the Commissioner's "*post hoc*

8

explanation of the ALJ's decision when the foundation for that explanation [was] nowhere to be found in the ALJ's written decision." *Id.* at *3 (citation omitted). Here, conversely, the ALJ considered and discussed Plaintiff's colitis and IBS, sufficient to permit meaningful review, and did not omit discussion of relevant evidence submitted at the hearing. (*See generally* AR 859-85.) The ALJ specifically considered Plaintiff's testimony in crafting his RFC determination, including Plaintiff's testimony that "during a flareup, she was in the bathroom five to ten times per day with each trip lasting at least [fifteen] minutes . . . ." (*Id.* at 868.) While "'any statements of the individual concerning his or her symptoms must be carefully considered,' . . . the ALJ is not required to credit them." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 363 (3d Cir. 2011) (citing SSR 96-7p (July 2, 1996) and 20 C.F.R. § 404.1529(a)).

As discussed in more detail below, given the ALJ's thorough analysis and citation to the record, this case is unlike *Williams*, where the parties agreed that the ALJ's decision "neither cited, nor discussed" a report reflecting the plaintiff's urinary frequency. 2019 WL 4574502, at *2. In *Williams*, instead of expressly affording the report little or no weight, the ALJ "simply said nothing about this evidence." *Id.* at *3.

Here, the Court finds that the ALJ's RFC determination is supported by substantial evidence in the record. An ALJ need not "perform a 'function-by-function' analysis . . . so long as the ALJ's RFC determination is supported by substantial evidence in the record." *Glass v. Comm'r of Soc. Sec.*, No. 18-15279, 2019 WL 5617508, at *8 (D.N.J. Oct. 31, 2019). The Court finds that the ALJ "provided a thorough analysis of the available medical evidence in the record[.]" *Paul H. v. Comm'r of Soc. Sec.*, No. 24-5970, 2025 WL 1348534, at *5 (D.N.J. May 8, 2025). The ALJ made the RFC determination "[a]fter careful consideration of the entire record," and specifically considered Plaintiff's testimony that she experienced colitis "flareups lasting for several days about

9

three times or so per month, with frequent bowel movements[.]" (AR 868.) In his decision, the ALJ explained that Plaintiff "testified that when she was not in a flareup, she was okay, and could mostly stay out of the bathroom." (*Id.*) The ALJ noted that at the November 2023 hearing, Plaintiff testified that: (1) "she required multiple bathroom trips"; (2) her "last flareup was between July and September of 2023"; and (3) she had "about four to six flareups per year, with each lasting from one week to two months[.]" (*Id.* at 869.) The ALJ then explained that "[a]fter careful consideration of the evidence" Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of [Plaintiff's] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record[.]" (*Id.* at 872.) The ALJ noted that Plaintiff's "statements about the intensity, persistence, and limiting effects of her symptoms [were] inconsistent because . . . the record reflects that her conditions were more controlled than she alleged, with fewer flareups, good response to medication, and gaps in treatment." (*Id.* at 873.)

In addition to Plaintiff's testimony, the ALJ explicitly discussed and considered the following in his decision: (1) March 2013 hospitalization records; (2) April 23, 2013 outpatient follow-up visit records; (3) numerous gastroenterology visit records from May 2014 through August 2018; (4) June 6, 2014 and September 11, 2015 sigmoidoscopy results; (5) July 1, 2016 and October 12, 2017 emergency department records; (6) knee injection records for treatment occurring between May 29, 2015 and June 12, 2015, and again in March 2016; (7) numerous orthopedic visit records and imaging between January 2015 and September 2018; and (8) the opinion evidence of Caroline Shubeck, M.D., Nancy Simpkins, M.D., Neha Patel, M.D., James Rushmore, P.T. ("Rushmore"), and Jorge Alvarez, M.D. ("Alvarez"). (*Id.* at 869-76.)

Moreover, contrary to Plaintiff's contention that the ALJ ignored the vocational expert's testimony, the ALJ specifically noted that he considered the vocational expert's testimony. (*Id.* at

878 ("Based on the testimony of the vocational expert, I conclude that, through the date last insured, considering the [Plaintiff's] age, education, work experience, and residual functional capacity, the [Plaintiff] was capable of making a successful adjustment to other work that existed in significant numbers in the national economy.").) Further, the specific testimony of the vocational expert that Plaintiff argues the ALJ ignored was the vocational expert's answering of hypothetical questions posed by Plaintiff's attorney which involved hypothetical individuals who would need multiple hours of restroom breaks per day. (*See id.* at 905-06.) The ALJ, however, stated that he came to his RFC determination "[a]fter careful consideration of the entire record," which this Court accepts as true. *See Ramirez v. Kijakazi*, No. 22-431, 2023 WL 5916906, at *5 (M.D. Pa. Sep. 11, 2023) (explaining that the ALJ "stated [that] he rendered his findings after consideration of the entire record[,]" and that the court "should take [the ALJ] at his word"); *Jones v. Comm'r of Soc. Sec.*, 297 F. App'x 117, 120 (3d Cir. 2008) ("[W]e take the ALJ at his word.").

Further, after such consideration, the ALJ concluded that while "the record reflects some flareups," they "occurr[ed] far less frequently than [Plaintiff] alleged, and otherwise showed a good response to treatment, gaps in treatment, and [indicated] that her conditions were considered to be improved [or] in remission shortly before the date last insured." (AR 876.) The Court finds that such a conclusion is supported by substantial evidence in the record. *See Ronald Z. v. Bisignano*, No. 23-22798, 2025 WL 2923567, at *6-7, *8 (D.N.J. Oct. 15, 2025) (affirming ALJ's RFC determination where, among other things, "the ALJ considered years of record evidence"); *see also Faith S. v. Bisignano*, No. 24-989, 2026 WL 821832, at *11 (M.D. Pa. Mar. 25, 2026) (affirming ALJ's RFC determination and finding that "the ALJ properly analyzed the record such that substantial evidence supports his conclusion that her treatment was routine and conservative, and that these treatments appeared to ameliorate her symptoms").

11

**B.    The ALJ properly evaluated the opinion evidence from treating and examining providers, which is supported by substantial evidence in the record.**

Plaintiff argues that the "ALJ improperly discounted well-supported opinion evidence from treating and examining providers, substituting lay judgment for professional findings." (Pl.'s Moving Br. 19-24.) Specifically, Plaintiff contends that the ALJ improperly discounted those of: (1) Alvarez, Plaintiff's treating physician; (2) Rushmore, who conducted a functional capacity evaluation ("FCE"); (3) Linda Kanner, MSW, LCSW ("Kanner"), Plaintiff's treating therapist; and (4) Joy Journe, LSW ("Journe"). (*Id.*)

"When weighing medical opinions in Social Security matters, [ALJs] must *consider* a range of factors, but all they must *explain* are the reasons for their decisions." *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 638 (3d Cir. 2024) (emphasis in original). Under 20 C.F.R. § 404.1520c(a), an ALJ is required to consider medical opinions and determine the persuasiveness of the opinions by considering specific factors listed in the regulations. These factors include: (1) supportability; (2) consistency; (3) relationship of the medical source to the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, and extent of the treatment relationship; (4) specialization; and (5) other relevant factors. *Id.* § 404.1520c(c). Supportability and consistency are the most important factors. *Id.* § 404.1520c(b)(2). Accordingly, an ALJ must "explain how [he] considered [these two] factors" but need not "explain how [he] considered" the other factors. *Id.*

When giving this explanation, the ALJ "need not reiterate the magic words 'support' and 'consistent' for each doctor." *Zaborowski*, 115 F.4th at 639. It is sufficient, rather, for the ALJ to "weave supportability and consistency throughout [his] analysis of which doctors were persuasive." *Id.* "[T]he regulations[, moreover,] seek to enforce a 'source level' analysis, rather than dividing each source's opinions into different units to be separately analyzed[,]" so the ALJ

need not perform a supportability and consistency analysis "with regard to every aspect of the [medical] opinion." *Pyle v. Comm'r of Soc. Sec.*, No. 23-815, 2024 WL 4278291, at *1 n.1 (W.D. Pa. Sep. 24, 2024). Further, the ALJ is not required to provide a "written analysis about how [he] considered each piece of evidence." *Joseph P. v. Comm'r of Soc. Sec.*, No. 21-13524, 2023 WL 1929945, at *5 (D.N.J. Feb. 10, 2023) (citations omitted). The ALJ, moreover, "'is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph [would] probably suffice.'" *Kelly v. Colvin*, No. 09-759, 2013 WL 5273814, at *10 (D. Del. Sep. 18, 2013) (quoting *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981)). It is, additionally, "not for this court to reweigh the various medical opinions in the record[,]" but instead "to determin[e] if there is substantial evidence to support the ALJ's weighing of those opinions." *Id.* (citations omitted).

Here, contrary to Plaintiff's assertions, the ALJ properly considered the opinions of Alvarez, Rushmore, Kanner, and Journe by detailing their opinions in his decision and explaining why he gave them limited weight, all of which is supported by substantial evidence. (AR 866-67, 874-76.) First, the ALJ explained, in detail, Alvarez's opinion evidence but gave it limited weight because: (1) it was "largely rendered via a checklist form"; (2) it was "not supported by his own longitudinal largely benign physical examinations of the claimant . . . which showed intact lower extremity strength, intact upper and lower extremity sensation and reflexes, good knee range of motion, negative straight leg raising, a normal gait, and no crepitus, tenderness, nor synovitis"; (3) it was "not consistent with the treatment record as a whole" including that of Plaintiff's "longitudinal physical examinations by her other treating doctors"; and (4) although Alvarez noted that Plaintiff required a cane, "his contemporaneous treatment records do not corroborate" such a

13

recommendation and are not supported by his treatment record or that of other physicians. (*Id.* at 875-76.)

Second, the ALJ explained that Rushmore's opinion was given limited weight because: (1) "[t]he record only reflects [a] one-time assessment with [] Rushmore, but no other treatment . . . and no indication that [Rushmore] reviewed [Plaintiff's] other treatment records"; and (2) Plaintiff's "physical functioning at [Rushmore's] examination was not consistent with [Plaintiff's] contemporaneous physical examinations by her treating pain management doctor[,]" specifically those conducted "between April 2017 and September 2018." (*Id.* at 874.) Third, the ALJ explained that Kanner's opinion was "given little weight" because: (1) it was vague and did not "provide a function by function assessment of [Plaintiff's] ability to perform mental work related activities"; and (2) "the record does not contain any detailed treatment notes prior to the date last insured." (*Id.* at 866.) Fourth, the ALJ explained that Journe's opinion was given "little weight" because "Journe acknowledged that she first began treating [Plaintiff] . . . about four and a half years after the date last insured." (*Id.*)

Here, the Court finds that "the ALJ appropriately [and thoroughly] addressed the medical opinion evidence [of Alvarez, Rushmore, Kanner, and Journe] and gave his reasons . . . for rejecting" it as of limited weight, a determination that is supported by substantial evidence in the record. (*See* AR 866-67, 874-76); *Stephanie P. v. Comm'r of Soc. Sec.*, No. 21-12524, 2023 WL 2214179, at *4 (D.N.J. Feb. 24, 2023); *see also Tricia W. v. Comm'r of Soc. Sec.*, No. 24-11499, 2025 WL 3033994, at *6 (D.N.J. Oct. 30, 2025) (explaining that the ALJ does not have to "supply a comprehensive explanation" and that typically "a sentence or short paragraph would [] suffice" (citation omitted)); *Elliott v. Colvin*, No. 17-235, 2018 WL 1509022, at *1 n.1 (W.D. Pa. Mar. 27, 2018) (explaining that under the regulations in place at the relevant time here "the [ALJ] may

14

afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided" and affirming the ALJ's findings where "the ALJ included in his decision a substantial discussion as to why he gave the weight that he did to the various medical opinions").

### C.    The ALJ properly evaluated Plaintiff's impairments at step two.

Plaintiff argues that the "ALJ erred by failing to follow the minimal severity standard at step two when evaluating Plaintiff's impairments." (Pl.'s Moving Br. 24-26.) Plaintiff contends that the ALJ failed to "adequately discuss [Plaintiff's] treatment of [ulcerative colitis, chronic pain, anxiety, and depression, and instead, improperly] relied on minor, routine notes showing only that Plaintiff was not in acute psychological distress at the time of those evaluations." (*Id.* at 25.)

At step two, the ALJ is required to consider whether the claimant suffers from a medically determinable impairment (or combination of impairments) that is "severe" and lasts for the durational period. *See* 20 C.F.R. §§ 404.1520(a)(ii), (c). To be severe, the impairment must significantly limit the claimant's ability to perform "basic work activities." *See id.* §§ 404.1520(a), (c), 404.1522. To meet the durational requirement, the severe impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." *See id.* § 404.1509.

The claimant has the burden of establishing a severe impairment, at step two, but that burden "is not an exacting one." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). The claimant must only "demonstrate something beyond a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *Id.* (internal quotation marks omitted) (quoting SSR 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985)). Like every step in the sequential analysis, the Commissioner's severity determination at

15

step two will be upheld if it is supported by substantial evidence in the record as a whole. *Id.* at 360-61.

Here, the ALJ explicitly found that Plaintiff's degenerative disc disease with radiculopathy, osteoarthritis of the knees, IBS, ulcerative colitis, and overweight condition were severe impairments. (AR 865.) The ALJ also explicitly found that Plaintiff's depressive disorder and anxiety disorder were nonsevere impairments. (*Id.*) The ALJ explained that he "considered the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments" (*id.* at 865), and found that Plaintiff's "medically determinable mental impairments caused no more than 'mild' limitation in any of the functional areas" (*id.* at 866), which is supported by substantial evidence in the record. *Erazo v. O'Malley*, No. 22-820, 2024 WL 1704905, at *5 (E.D. Pa. Apr. 18, 2024) (affirming the ALJ's step two determination and finding that the ALJ "provided sufficient reasoning for his determination that [plaintiff's] other medically determinable impairments" were nonsevere). The ALJ further explained that he "considered all of [Plaintiff's] medically determinable impairments, including those that are not severe, when assessing" Plaintiff's RFC. (*Id.* at *10.)

As discussed above, the Court takes the ALJ at his word and finds that the ALJ properly evaluated Plaintiff's impairments at step two and that such an evaluation is supported by substantial evidence in the record. *See Ramirez*, 2023 WL 5916906, at *5 (explaining that the court "should take [the ALJ] at his word"); *Jones*, 297 F. App'x at 120 ("[W]e take the ALJ at his word.").

## IV.    <u>CONCLUSION</u>

For the reasons outlined above, the Court affirms the Commissioner's decision. The Court

will issue an Order consistent with this Memorandum Opinion.

/s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

DATED: MAY 28, 2026